# Richmond

## Edward Duffy Phillips v. Commonwealth of Virginia.

December 6, 1968.

Record No. 6828.

Present, All the Justices.

*Stanley E. Sacks* (*Richard J. Tavss; Sacks, Sacks & Kendall,* on brief), for plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button, Attorney General,* on brief), for defendant in error.

Eggleston, C.J., delivered the opinion of the court.

At the February, 1967 term of the court below two indictments were found against Edward Duffy Phillips. One charged that he did set fire to, burn, cause to be burned, aid, counsel and procure the burning of a certain automobile, his property, which at the time of the burning was insured against loss and damage by fire, with intent to injure the insurer. The other charged him with burning the automobile in violation of Code § 18.1-79, as amended [Repl. Vol. 1960]. At the election of the Commonwealth, he was tried on the first indictment.[1]

---

[1] Although the indictment makes no reference to the statute, both counsel for the defendant and the Attorney General agree that the charge and trial below were based on Code § 18.1-85, as amended [Repl. Vol. 1960], which reads:

Upon arraignment the defendant pleaded not guilty, was tried by a jury, found guilty as charged in the indictment, and his punishment fixed at confinement in the penitentiary for one year. On appeal he contends that the evidence is insufficient to support the verdict and judgment and that the trial court erred in its rulings on certain instructions.

The material evidence may be thus summarized: On November 5, 1966, at approximately 12:15 A. M., an investigator for the Norfolk City Fire Department went to Stockton Road near its intersection with the Naval Base Road in the city, and found a 1966 Mercury automobile on fire. An investigation disclosed that the motor and transmission had been stripped from the car. The car was owned by the defendant Phillips who the preceding day had reported to the police that it had been stolen.

About two months later Frank G. Kelly told the police that the defendant had induced him and Ronald Purchase to burn the car. Called as a witness for the prosecution, Kelly testified that a few days before the car was burned he had a talk with the defendant Phillips at the Norfolk Shipbuilding & Drydock Corporation where they were both employed; that Phillips told him that he was dissatisfied with the car and wanted to get rid of it; that he "wanted to make sure that the car was a total loss and the only way to make sure of that was to burn it." Phillips offered to pay Kelly for getting rid of the car in this manner.

Kelly agreed to undertake the commission and engaged Purchase, an enlisted man in the United States Navy, stationed on his ship at the same shipyard, to assist him in burning the car. Phillips gave the keys to the car to Kelly who took possession of it at the Phillips home in Portsmouth and with Purchase drove it to the Lewis Trailer Park in Norfolk. There they removed the engine and transmission from the vehicle. After stripping the car Kelly and Purchase towed it to Stockton Road where Kelly poured gasoline on the interior of the vehicle and set it on fire. Kelly said that Phillips paid him $100 for his part in the venture and that of this amount he gave Purchase either $35 or $40. Subsequently the engine which had been stripped from the Phillips car was installed in the Kelly car.

---

"If any person wilfully set fire to or burn, or cause to be burned, or aid, counsel or procure the burning of any building, or any goods or chattels, which at the time are insured against loss or damage by fire, with intent to injure the insurer, whether such person be the owner of the property or not, he shall be confined in the penitentiary not less than one nor more than ten years."

Purchase, likewise called as a witness for the prosecution, corroborated the testimony of Kelly in its essential details.[2]

The defendant Phillips took the stand and categorically denied the testimony of Kelly and Purchase as to his (Phillips') part in the plot to burn the car. However, on appeal he admits that their testimony, which the jury have accepted, was sufficient to sustain the finding of his complicity in the plot. But the defendant insists that, nevertheless, the evidence is insufficient to sustain his conviction, because, he says, it fails to show that at the time the car was burned it was insured against loss by fire and that he had procured its burning with intent to injure the insurer. A further examination of the evidence shows that there is no substance to these contentions.

The Commonwealth proved that on November 7, 1966, two days after the car had been burned, the defendant went to Richmond and reported to the agent of the American Security Insurance Company of Atlanta, Georgia, which had issued a policy covering the vehicle, that it had been stolen and destroyed by fire. The agent testified that the car was insured with that company.

The defendant admitted his report of the loss of the car to the agent for the insurance company in Richmond, who, he said, told him that the car was covered by insurance but that "they would have to check on it" before settling for the loss.

The policy was offered in evidence by the defendant. It is denominated a "Family Automobile Policy" and was issued to the defendant, who was then a resident of Richmond, for the period of thirty-six months from June 29, 1966. The policy carried among others the usual "comprehensive coverage" provision by which the company agreed to pay "for loss caused other than by collision to the owned automobile," which was therein described as the 1966 Mercury later burned. For this coverage there was paid a premium of $24 for the first year and $21 for each of the other years during the term of the policy. Since the loss of the car by fire was obviously a loss "caused other than by collision," its destruction in this manner was a hazard covered by the policy.

Purchase testified that the defendant told him that "he wanted to make sure" that the car was a total loss, for, if so, "the insurance company would pay off his policy." He further testified that the defendant later told him that the purpose of his visit to Richmond was

---

[2] Kelly and Purchase pleaded guilty to indictments charging them with burning the car, were convicted, and were awaiting sentence at the time of this trial.

"to settle with the insurance company on the car" and that it had agreed to pay him $2,911. This testimony and the other related circumstances fully warranted the finding that the defendant procured the destruction of the car for the purpose of collecting the insurance thereon, that is, "with intent to injure the insurer," as contemplated by the statute.

On the whole we find the evidence amply sufficient to sustain the conviction of the defendant.

The defendant's complaints of the rulings of the trial court in granting and refusing certain instructions are without substance and require no discussion.

We find no error in the proceedings in the trial court and the judgment is

*Affirmed.*